## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Mark W. W.,                                        No. 23-cv-3263 (ECT/DLM)

        Plaintiff,

v.

Martin J. O'Malley,                           **REPORT AND**
Commissioner of Social Security       **RECOMMENDATION**
Administration,

        Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Mark W. W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him benefits. This matter is before the Court on the parties' briefs seeking judgment on the administrative record. (Docs. 14 (Plaintiff's motion), 15 (Plaintiff's memorandum), 17 (Commissioner's brief), 19 (Plaintiff's reply).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that judgment be granted in favor of the Commissioner.

## BACKGROUND

In spring of 2021, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging that he had been disabled since February 22, 2021. (Tr.[1] at 10, 261–63.[2]) The Social Security Administration ("SSA") denied both applications initially (Tr. at 72–85), and upon reconsideration (Tr. at 86–99). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing by telephone on the matter on October 20, 2022. (Tr. at 143–44 (request for hearing), 29–66 (hearing transcript).) Counsel represented Plaintiff at the hearing, and Plaintiff testified on his own behalf. (Tr. at 29–31, 35–61.) A vocational expert also testified, concluding that if the ALJ limited Plaintiff to medium work with some postural and environmental limitations, he could still perform his past work as a mixer operator and laborer. (Tr. at 63–64.)

On December 9, 2022, the Commissioner sent his notice of an unfavorable decision to Plaintiff. (Tr. at 7–9 (notice), 10–18 (decision).) The ALJ recognized that Plaintiff suffered from several medically determinable impairments, including "diabetes mellitus without complication, dermatitis, groin abscess, essential hypertension, obesity,

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on February 23, 2024. (Docs. 13–13-2.) For ease of reference, the citations to the transcript will treat the record like a single document and will identify the page number listed on the lower right corner of the document rather than the docket page number.

[2] Although the ALJ notes that Plaintiff filed both an SSI and DIB application (Tr. at 10), the record only contains Plaintiff's DIB application. (Tr. at 261–63.) Plaintiff claims that he has only applied for SSI. (Doc. 18 at 6.) This dispute does not alter the outcome of this judicial review, and the Court will discuss and apply the statutes and regulations relating to both types of disability claims for thoroughness.

cervicalgia, multilevel cervical spine degenerative disc disease/facet arthropathy with moderate spinal canal narrowing at the C5-6 level, lumbar spine bilateral foraminal narrowing without high grade central canal narrowing (post lumbar laminectomy in June 2015), stab wound to abdomen/umbilicus, anxiety disorder, depressive disorder and posttraumatic stress disorder (PTSD)." (Tr. at 12–13.) Yet the ALJ concluded that none of Plaintiff's impairments, either singly or in combination, were severe because none "has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (Tr. at 13 (citing 20 C.F.R. §§ 404.1521 *et seq.*, 416.921 *et seq.*).) In reaching this conclusion, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent" with the record. (Tr. at 15.) The ALJ thus concluded that Plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from February 22, 2021, through the date of [the ALJ's] decision." (Tr. at 18.) Plaintiff appealed the ALJ's decision, but the SSA's Appeals Council denied his request for further review, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1–3.)

Plaintiff then filed this federal action seeking judicial review of the Commissioner's decision. (Doc. 1.) Plaintiff raises two challenges to the ALJ's determination that he is not disabled: 1) substantial evidence in the record does not support the ALJ's determination that the combination of Plaintiff's medically determinable impairments is not severe; and 2) the ALJ failed to sufficiently develop the record and relied solely on his lay opinion

rather than adequate medical evidence. Based on these errors, Plaintiff asks the Court to reverse the Commissioner's decision and award benefits or remand the matter for further review.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ used erroneous legal standards, or if they incorrectly applied the law, those may be reversible legal errors. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

4

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) for evaluating DIB and SSI claims, respectively.[3] Rather, Plaintiff asserts that the ALJ critically erred at step two by failing to find that Plaintiff's combined impairments are severe, failing to adequately develop the record, and improperly substituting his own lay judgment for medical evidence supporting his conclusion. The Court will consider Plaintiff's challenges below.

## I.    SUBSTANTIAL EVIDENCE IN THE RECORD SUPPORTS THE ALJ'S CONCLUSION AT STEP TWO THAT PLAINTIFF'S IMPAIRMENTS, ALONE OR IN COMBINATION, WERE NOT SEVERE.

Plaintiff first challenges the ALJ's conclusion that his mental impairments are not severe. He argues that the standard to find severity is not a high one, and that SSA decisions to deny disability based on a finding of no severe impairments are thus rare. He claims that the ALJ wrongly credited Plaintiff's ability to work at McDonald's for up to 12 hours each week as evidence that his mental impairments were non-severe, and that a review of the

---

[3] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ here only proceeded through step two at which he found Plaintiff's impairments were neither severe, nor of a duration of at least 12 continuous months. (Tr. at 13.) Had the ALJ continued through the remaining steps, at step three, an ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's residual functional capacity ("RFC"), and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

record shows that his severe mental impairments result in significant difficulty interacting with others. According to Plaintiff, these errors are not harmless because the ALJ prematurely stopped his sequential evaluation at step two when he should have proceeded to analyze the record evidence under the remaining steps.

The Commissioner contends that the ALJ properly considered whether Plaintiff's medically determinable mental impairments resulted in more than minimal limitations to his ability to perform basic work activities, concluding that he had no greater than mild limitations in one functional area—interacting with others. According to the Commissioner, Plaintiff has failed to point to record evidence that his mental impairments had a greater than minimal impact on his ability to perform basic work activities, and therefore, the Court should reject Plaintiff's unsubstantiated argument.

The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1509, 416.909. At step two of the five-step sequential process, an ALJ must determine whether a plaintiff has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in §§ 404.1509 and 416.909], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). To be severe, an impairment must "significantly limit[ ] [a plaintiff's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). By contrast, "[a]n impairment or

combination of impairments is . . . 'not severe' . . . when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). It is a claimant's burden at step two to prove disability. *See Rickey P. V. v. Kijakazi*, No. 20-cv-2199 (JFD), 2022 WL 3214991, at *6 (D. Minn. Aug. 9, 2022). "Although severity is not an onerous requirement, 'it is also not a toothless standard, and [the Eighth Circuit has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing.'" *Kaitlin W. v. O'Malley*, No. 24-cv-6 (DJF), 2024 WL 4534725, at *4 (D. Minn. Oct. 21, 2024) (quoting *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (collecting cases)). That said, the SSA has cautioned it adjudicators that "[g]reat care should be exercised in applying the not severe impairment concept" and, if in doubt, mandates that "the sequential evaluation process should not end with the not severe evaluation step." SSR 85-28, 1985 WL 56856, at *4. However, if an ALJ finds that the record shows a claimant does not have a severe impairment or combination of impairments, they must conclude "that the individual's ability to engage in [substantial gainful activity] is not seriously affected." *Id.*

Here, the ALJ made a finding at step two of the sequential evaluation process that none of Plaintiff's impairments, either singly or in combination, have significantly limited his ability to perform basic work-related activities[4] for a duration of 12 consecutive months

---

[4] Basic work-related activities include physical movement, use of senses, ability to follow instructions, use of judgment, ability to respond appropriately to others, and ability to deal with routine changes. (Tr. at 13 (citing SSR 85-29, 1985 WL 56856, at *2 (Jan. 1, 1985).)

or are expected to result in death. (Tr. at 13–14.) Upon review of the briefing, Plaintiff appears to focus his challenge not on the severity of his physical impairments,[5] but on the limitations caused by his mental impairments. As to those mental impairments, which include anxiety, depression, and PTSD, the ALJ determined none of these disorders has interfered with Plaintiff's ability to work at McDonald's part-time. (Tr. at 15–16.) The ALJ concluded that Plaintiff's ability to sustain this part-time work shows that he can understand, remember, and carry out instructions, use his judgment to complete tasks, respond appropriately to others in the workplace, demonstrate appropriate mood and behavior, and deal with routine changes in his workplace. (*Id.*) The ALJ also noted that Plaintiff had seen some improvement to his anxiety and depression with medication, but that even when he had been noncompliant with medications, he could still function to perform his part-time work. (*Id.*) The ALJ specifically found that, as to Plaintiff's ability to interact with others, although his girlfriend had stabbed him during a fight and although

---

[5] The ALJ considered Plaintiff's physical impairments, including obesity, diabetes mellitus, dermatitis, groin abscess, hypertension, umbilical stab wound/hernia, and spinal degeneration. (Tr. at 14–15.) Of these impairments, neither Plaintiff's obesity nor his spinal degeneration had resulted in motor limitations; his diabetes mellitus, dermatitis, groin abscess, and hypertension had been controllable with medications; his diabetes mellitus, dermatitis, groin abscess, and spinal degeneration had not lasted at a "severe" level for 12 months continuously or longer and were not expected to result in death; and there were no other indications that a basic functional ability was severely impacted. (*Id.*) Thus, even though Plaintiff claimed he cannot work because of these impairments that cause hip, back, neck, leg, and foot pain and an inability to lift more than 20 pounds, the ALJ found the record did not support his level of pain from these physical impairments and pointed out that Plaintiff could still bike to work and has had mostly unremarkable physical examinations. (Tr. at 16.)

he testified that he tries to avoid interacting with others, the record also showed that Plaintiff could regularly work part-time and take public transportation. (*Id.*)

The ALJ then considered the four broad areas of mental functionality to determine whether, and to what extent, Plaintiff's mental impairments limit any of these areas.[6] (Tr. at 16–17.) As to the first area—understanding, remembering, or applying information—the ALJ found that Plaintiff suffered from no limitation because he could do simple math, read, write, follow steps to complete tasks, remember things, and apply information. (*Id.*) In the second area of mental functionality—interacting with others—the ALJ determined that Plaintiff had only a mild limitation because he had generally normal mood and affect, had been able to respond appropriately in the workplace to maintain a job, could take public transportation, and had remained functional even when noncompliant with his anxiety and depression medications. (Tr. at 17.) Reviewing the third functional area—concentrating, persisting, or maintaining pace—the ALJ again found no limitation where Plaintiff could answer questions during the hearing and had maintained part-time employment by following instructions and completing tasks at an acceptable pace. (*Id.*) Finally, as to the fourth functional area—adapting or managing oneself—the ALJ determined that Plaintiff had no limitation because he has been able to make independent decisions, regulate his

---

[6] These are: (1) the person's ability to understand, remember, or apply information; (2) the person's ability to interact with others; (3) the person's ability to concentrate, persist, or maintain pace; and (4) the person's ability to adapt or manage themself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to rate the degree of a person's limitations in each of these functional areas on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4).

emotions, control his behaviors, avoid workplace hazards, and manage his psychiatric symptoms with medications. (*Id.*)

The substantial evidence in the record standard requires the Court to review both evidence that supports the ALJ's conclusions, and evidence that detracts from it. *See Hartfield v. Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). There must be enough evidence supporting an ALJ's conclusions that a reasonable mind would agree the decision makes sense—even if inconsistent conclusions could be reached—so long as the ALJ's conclusion is one of the possible conclusions. *See Hall v. Chater*, 109 F.3d 1255, 1258 (8th Cir. 1997).

Reviewing the record here, the Court notes that Plaintiff testified at the hearing that he struggles with depression and anxiety and finds interacting with people to be difficult. (Tr. at 55.) It also appears from the record that Plaintiff received mental health care during the relevant period from various healthcare providers who adjusted his depression and anxiety medications based on his mood and side-effects, and that Plaintiff reported medications provided some help with his mood. (*See, e.g.*, Tr. at 364–65, 367–68, 371–72, 383, 386.) During some medical appointments Plaintiff had depressed or anxious moods, while other times he exhibited normal mood and affect. (*See, e.g.*, Tr. at 75, 91, 369, 372, 383, 442, 469.) It also appears that Plaintiff had an appointment with a psychiatrist scheduled, although the record lacks evidence of what occurred during that visit. (Tr. at 513, 518.) On this mixed record, the Court cannot conclude the ALJ's determination that Plaintiff's mental impairments were non-severe lacks substantial support in the record as a whole. *Nash*, 907 F.3d at 1089.

Plaintiff argues that the ALJ should not be permitted to infer that working 15 hours or less each week shows that he has the functional capacity to work full-time. The Court agrees that finding a person not disabled means finding that they "have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Lori M. S. v. O'Malley*, No. 23-cv-1771 (DLM), 2024 WL 3949333, at *6 (D. Minn. Aug. 27, 2024) (quoting *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005)). However, an ALJ must consider all record evidence in reaching this conclusion, and considering a person's ability to work part-time in determining disability benefit eligibility is expressly permitted by regulation as part of that evidence:

> The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level. If you are able to engage in substantial gainful activity, we will find that you are not disabled. . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did. We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

20 C.F.R. §§ 404.1571, 416.971. Additionally, courts in this Circuit have concluded that part-time work ability can contribute support to an ALJ's conclusion that an individual is not disabled. *See, e.g.*, *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005); *Phillip F. v. O'Malley*, No. 23-cv-3666 (DJF), 2024 WL 3791993, at *7, *8 (D. Minn. Aug. 13, 2024); *Lopez v. Colvin*, 959 F. Supp. 2d 1160, 1171 (N.D. Iowa 2013); *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1237 (E.D. Mo. 2012). Evidence that Plaintiff can perform basic work activities cuts against Plaintiff's claims that his impairments are severe, and it remains

Plaintiff's burden to point to substantial record evidence the ALJ so overlooked that a reasonable person could not reach the ALJ's conclusions. *Hey v. Colvin*, 136 F. Supp. 3d 1021, 1029 (D. Minn. 2015) (citing *Brown v. Shalala*, 15 F.3d 97, 99 (8th Cir. 1994)). Because Plaintiff has not met this burden, the Court cannot recommend reversal of the ALJ's conclusions at step two of his decision.

## II.    SUBSTANTIAL EVIDENCE IN THE RECORD SUPPORTS THE ALJ'S CONCLUSIONS BASED ON A SUFFICIENTLY DEVELOPED RECORD.

Plaintiff next argues that the record does not contain substantial support for the ALJ's decision because the ALJ failed to adequately develop the record and substituted his own lay judgment in place of medical evidence to evaluate Plaintiff's back impairments. Specifically, Plaintiff contends that the state agency consultants opined that the record lacked sufficient evidence to render a decision, and while the ALJ had a duty to resolve that evidentiary gap, he instead used his own lay judgment to fill it. Plaintiff thus claims that remand is warranted so that a qualified medical professional can review a more complete record, render a decision, and provide an appropriate evidentiary basis on which the SSA can determine Plaintiff's eligibility for disability benefits.

The Commissioner disagrees, arguing that the ALJ appropriately considered the record evidence on Plaintiff's back-related impairments but found that they did not last for the required durational period of at least 12 continuous months, improved with treatment, and did not limit Plaintiff's daily activities as much as claimed. The Commissioner points out that the ALJ found Plaintiff's back conditions did not appear to worsen until about a year after his alleged disability onset date, and that they showed some improvement with a

short course of chiropractic treatment. The Commissioner also notes that Plaintiff could bike to work, which the ALJ found inconsistent with the level of impairment that Plaintiff had claimed. As to Plaintiff's argument that even the expert agency consultants found the record too light to make a determination, the Commissioner observes that the SSA received additional record evidence on Plaintiff's back-related impairments after the experts performed their evidentiary review—which the ALJ considered—and that an ALJ need not seek new expert guidance each time a record is updated. The Commissioner also argues that Plaintiff has not shown he suffered prejudice or unfair treatment because of the ALJ's development of the record. If the record were truly underdeveloped, the Commissioner claims, then Plaintiff's counsel would have raised this during the hearing and would have requested a medical expert's testimony. The Commissioner also points out that the ALJ held the record open for outstanding medical evidence after the hearing, received additional evidence, then evaluated all of the evidence—including medical evidence—to conclude that Plaintiff was not disabled. This does not amount to an inappropriate substitution of a lay opinion, according to the Commissioner, but reflects the reality that an ALJ weighs all the evidence to reach a conclusion that need not rely on any one medical opinion, but reflects an administrative judgment based on the combined record evidence.

An ALJ must "develop the record fully and fairly . . . because an administrative hearing is not an adversarial proceeding." *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994) (quoting *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir. 1992)). Sometimes an ALJ may find the evidence in a claimant's case is "insufficient or inconsistent" such that the record "does not contain all the information . . . need[ed] to make [a] determination or decision." 20

13

C.F.R. §§ 404.1520b(b), 416.920b(b). Should this occur, an ALJ may recontact a claimant's medical source(s) for additional evidence or clarification, request additional already-existing evidence, order a consultative examination, or ask the claimant for more information. *Id.* §§ 404.1520b(b)(2), 416.920b(b)(2). That said, ALJs are "not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Grindley*, 9 F.4th at 630 (quoting *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010)) (cleaned up). A crucial issue may be undeveloped "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Id.* (citing *Jones*, 619 F.3d at 969).

Reviewing the record evidence here concerning Plaintiff's back impairments, in Plaintiff's disability report completed on March 23, 2021, Plaintiff does not identify back-related issues among the conditions that limit his ability to work. (Tr. at 298, 304.) Plaintiff testified at the hearing on October 20, 2022, that his back problems began in May 2022 after McDonald's hired him to perform work that included unloading food from trucks but did not provide him with a requested back brace. (Tr. at 38–39.) At that point, Plaintiff testified that he had to reduce his hours at McDonald's from 25 to about 12 each week. (Tr. at 39.) Consistent with Plaintiff's account of the timeline, the record reflects that Plaintiff began chiropractic treatments on his back-related condition in July 2022. (Tr. at 354, 525–57.) Before that date, Plaintiff's physical evaluations showed only mild degeneration of his shoulders and spine with a slight lower thoracic curve, but otherwise showed no

deformities, tenderness, or reduced range of motion. (*See, e.g.*, Tr. at 442, 465–66, 468, 470, 497.) Plaintiff testified that, after spring of 2022 when he had "messed up [his] back," performing even daily chores had become challenging because his pain increased when walking, standing, sitting for longer periods, and lifting things. (Tr. at 57.) At the hearing, Plaintiff explained that he had just completed updated imaging on his back, and the ALJ responded that he would need those records and agreed to hold the record open to receive them. (Tr. at 57, 59–61.) The SSA received those records from September and October 2022 into the record soon after, and the imaging they contained showed moderate narrowing involving several vertebrae and moderate to severe bilateral nerve compression. (Tr. at 558–64.) During chiropractic treatments that spanned from July through October 2022, Plaintiff saw some improvements. (*See, e.g.*, Tr. at 528, 530, 532, 534, 536, 540, 543, 545, 547, 549, 551, 553, 555.)

The ALJ reviewed the record of Plaintiff's back-related conditions described above and concluded that the "back pain [that] started in May 2022 . . . does not meet the durational requirement for a severe impairment." (Tr. at 15, 16.) The ALJ observed that "even with treatment for less than three months, the claimant's spinal conditions have improved," underscoring that a severity finding was not appropriate concerning Plaintiff's back conditions. (Tr. at 15.) The ALJ also found that the level of pain Plaintiff alleged was inconsistent with his ability to bike to work. (Tr. at 16.)

A court's role on review is not to reweigh the evidence, but to ask whether, on the above record, an ALJ reached a conclusion that the record substantially supports. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). On this record, the Court cannot find that

the ALJ's conclusion on Plaintiff's back-related impairments lacks substantial support in the record as a whole. By statute and regulation, where—as here—the durational requirement is not met, the very definition of disability is not met. 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1509, § 416.909.

Plaintiff claims that the record is insufficiently developed here because the ALJ lacked appropriate medical opinion evidence on which to rely. But Plaintiff has not explained why the record, which contains medical evaluations and treatments of his back-related impairments, fails to provide enough evidence to substantially support the ALJ's conclusion that the 12-month durational requirement to find severity was not met. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("While an ALJ does have a duty to develop the record, this duty is not never-ending . . . ."). Relevant here, Plaintiff does not claim that there are any records that would show the durational requirement had, in fact, been met, nor would that be expected since Plaintiff said his problems developed just a few months before the hearing. Therefore, the Court respectfully disagrees that the ALJ failed in his duty to adequately develop the record on the severity of Plaintiff's back-related impairments.

To the extent that Plaintiff claims the ALJ should have sought updated state agency expert opinions after receiving new record evidence on Plaintiff's back-related impairments, the Court finds this argument unpersuasive. While the SSA received additional medical evidence after the expert evaluations, the ALJ reasonably determined that nothing could change the severity outcome on Plaintiff's back-related impairments because they did not meet the 12-month durational requirement. 42 U.S.C. § 423(d)(1)(A);

*see also* 20 C.F.R. §§ 404.1509, § 416.909; *Carlson v. Astrue*, 604 F.3d 589, 595 (8th Cir. 2010) (affirming a district court's decision where an ALJ did not obtain an updated medical expert opinion where substantial evidence supported the ALJ's conclusions, rendering additional testimony unnecessary). And the Court has already concluded above that substantial evidence in the record as a whole supported the ALJ's severity determinations at step two.

Plaintiff also claims that, with an insufficient record before him, the ALJ impermissibly substituted his own lay opinion for the medical opinions that the record lacked. However, the Court has determined the record provides sufficient evidence to support the ALJ's conclusions about Plaintiff's back-related impairments. In this Circuit, judicial concerns about lay opinions typically arise when a plaintiff's residual functional capacity ("RFC")—what a person can do despite their severe and non-severe impairments—is determined by an ALJ without medical evidence in the record about those impairments. *See, e.g.*, *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir. 2001); *Hannah L. v. O'Malley*, No. 22-cv-3102 (ECT/LIB), 2024 WL 407352, at *6 (D. Minn. Jan. 17, 2024) (explaining that a claimant's RFC is an administrative assessment left to the ALJ to determine based on the entire record, although it must rely on some medical evidence), *R. & R. adopted*, 2024 WL 406687 (D. Minn. Feb. 2, 2024). But here, the ALJ did not reach beyond step two in the sequential analysis; he never determined the parameters of Plaintiff's RFC because he found that Plaintiff did not have any severe impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *see also Eichelberger v. Barnhart*, 390 F.3d

17

584, 591 (8th Cir. 2004) ("The fourth step in this analysis requires the ALJ to determine a claimant's RFC."). In sum, substantial evidence in the sufficiently developed record supports the ALJ's step two conclusion that Plaintiff had no severe impairments. The Court finds no basis for reversal as to the development of the record of the ALJ's reliance upon it to reach his conclusion.

## RECOMMENDATION

Based on the above, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Plaintiff's brief seeking judgment on the administrative record (Doc. 14) be **DENIED**; and

2. Defendant's brief seeking judgment on the administrative record (Doc. 17) be **GRANTED**.

DATED:  December 2, 2024             *s/Douglas L. Micko*
                                     DOUGLAS L. MICKO
                                     United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).